UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORDAN I. RUIZ,

                             Plaintiff,                    No. 18-CV-7007 (KMK)

              v.                                           OPINION & ORDER

WESTCHESTER COUNTY, *et al*.,

                             Defendants.

Appearances:

Jordan I. Ruiz
East Elmhurst, NY
*Pro se Plaintiff*

Sean Timothy Carey, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Jordan Ruiz ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42 U.S.C.

§ 1983, against Correctional Officer Scott Monteleon ("Monteleon"), Sergeant Danny Lopez

("Lopez"), and Westchester County (the "County") (collectively, "Defendants"), alleging that

they violated Plaintiff's constitutional rights during Plaintiff's detention at Westchester County

Jail ("WCJ").  (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 27).)  Plaintiff alleges that

Defendants failed to prevent Plaintiff from being placed in a holding cell with inmate Sincere

Smith ("Smith"), and that Plaintiff suffered injuries from a physical altercation with Smith as a

result.[1]  (*See id*. at 2–3.)[2]  Before the Court is Defendants' Motion To Dismiss (the "Motion") the Second Amended Complaint (the "SAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 31).)  For the reasons discussed below, the Court grants the Motion.

## I.  Background

### A.  Factual Background

The following facts are drawn from the SAC and are assumed true for purposes of resolving the instant Motion.

On July 31, 2017, Plaintiff "was involved in a fist fight" with Smith at WCJ.  (SAC 2.) Plaintiff alleges that he and Smith were consequently added to a "Keep Sep[a]rate" list as a result of their fight.  (*Id*. at 3.)  Plaintiff was also placed in "Protective Custody" and relocated to the 3-West housing unit.  (*Id*. at 2–3.)  Plaintiff alleges that he was put in protective custody because he had been involved in three fights over the course of 10 days and because Smith was determined to be "a danger to Plaintiff because of undisclosed reasons."  (*Id*. at 2.)  However, according to Plaintiff, Smith "was determined to assault Plaintiff and formulated a plot" to obtain protective custody status himself.  (*Id*. at 3.)  On October 12, 2017, Plaintiff was taken to the "old jail facility clinic" for a medical evaluation.  (*Id*.)  While Plaintiff was waiting to be seen, Monteleon allegedly "placed . . . Smith into the same holding cell" as Plaintiff.  (*Id*.)  Smith began to attack Plaintiff, which resulted in "several physical injuries."  (*Id*.)

According to Plaintiff, the Westchester County Department of Corrections ("WCDOC") prints a daily "keep sep[a]rate list," and Defendant Monteleon "was in possession" of that list for

---

[1] Smith is not a party in this Action.

[2] The Court cites to the ECF page numbers stamped at the top right corner of the SAC.

that day.  (*Id.*)  Plaintiff alleges that Monteleon "grossly failed to review" the keep separate list, which led to Smith attacking Plaintiff.  (*Id.*)  Plaintiff further claims, upon information and belief, that the WCDOC has a "pattern, policy[,] and/or custom of routinely failing to review the keep sep[a]rate list prior to placing inmates into holding cells with other inmates."  (*Id.* at 4.)  According to Plaintiff, there are "similar civil actions alleging [the existence of this] pattern."  (*Id.*)

As a result of the attack, Plaintiff allegedly "suffered pain, soreness[,] and swelling."  (*Id.* at 7.)  Plaintiff claims violations of his constitutional rights under the Eighth and Fourteenth Amendments.  (*Id.* at 4.)  Plaintiff seeks $50,000 in compensatory damages and $200,000 in punitive damages.  (*Id.* at 7.)

B.  Procedural Background

Plaintiff filed his Complaint and request to proceed in forma pauperis ("IFP") on August 2, 2018.  (*See* Dkt. No. 1; Compl. (Dkt. No. 2).)  Plaintiff's IFP request was granted on August 27, 2018.  (Dkt. No. 4.)  Plaintiff initially included the WCDOC as a named Defendant, but the Court dismissed this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and added the County as a Defendant instead.  (*See* Order of Service (Dkt. No. 6).)  On October 11, 2018, Plaintiff filed his Amended Complaint.  (*See* Am. Compl. (Dkt. No. 10).)  Defendants filed a Motion To Dismiss the Amended Complaint (the "First Motion") and accompanying documents on May 10, 2019.  (*See* Not. of First Mot. (Dkt. No. 21).)

On December 16, 2019, Plaintiff filed the SAC.  (*See* SAC.)  Pursuant to an Order from the Court, Defendants withdrew the First Motion, (*see* Dkt. Nos. 28–30), and submitted the instant Motion on February 7, 2020, (*see* Not. of Mot.; *see also* Decl. of Sean T. Carey, Esq. in Supp. of Mot. ("Carey Decl."); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt.

3

Nos. 32–33)).  Although Plaintiff's request for additional time to respond to the Motion, (*see*

Dkt. No. 35), was granted, (*see* Dkt. No. 36), Plaintiff did not meet his new response deadline of

April 5, 2020, (*see* Dkt. No. 37).  Upon Defendants' request, the Court deemed the Motion fully

submitted on April 11, 2020.  (*See* Dkt. Nos. 37–38.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[ ] across the

line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

4

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[ ] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).  When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B.  Analysis

Liberally construed, the SAC alleges violations under the Fourteenth Amendment against all Defendants: against Monteleon, Plaintiff alleges a failure-to-protect claim; against Lopez, Plaintiff appears to allege a claim based on supervisory liability; and against the County, Plaintiff appears to allege a municipal liability claim, pursuant to *Monell*.[3, 4]  Defendants argue that no claim is plausibly alleged.  (*See generally* Defs.' Mem.)

1.  Personal Involvement

Defendants argue that any claim against Lopez fails because the SAC does not allege that Lopez had any personal involvement in the underlying incident.  (*See id.* at 8.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

---

[3] The SAC also refers to the WCDOC as a Defendant.  (*See* SAC 5.)  As the Court previously indicated, the WCDOC is no longer a party to this Action, and any claims against the WCDOC as such have already been dismissed.  (*See* Order of Service.)

[4] Plaintiff was a pretrial detainee at the time of the incident, so the Fourteenth Amendment, rather than the Eighth Amendment, applies.  (*See* Carey Decl. Ex. E ("Cert. of Disposition") (Dkt. No. 32-5).)  The Court may take judicial notice of the Certificate of Disposition in assessing Plaintiff's legal detainment status even while resolving a motion to dismiss.  *See Torres v. Vasta*, No. 18-CV-8706, 2019 WL 4640247, at *6 n.6 (S.D.N.Y. Sept. 24, 2019) ("The Court may take judicial notice of . . . Plaintiff's . . . Certificate of Disposition, not for [its] truth but for [its] legal effect. (collecting cases)).  Here, the Certificate of Disposition confirms that Plaintiff was arrested on June 29, 2017 and convicted on February 15, 2018, making the underlying October 12, 2017 incident one that occurred while Plaintiff was a pretrial

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* at 139 (citation and emphases omitted).  In other words, "[b]ecause vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at

676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five

categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4

(S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims

that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has failed to plausibly allege personal involvement as to Defendant Lopez.

Lopez, whose name appears once in the SAC, (*see generally* SAC), is described only as a

"Supervisor[]," and is not alleged to have committed any specific act precipitating or condoning

either Monteleon's alleged constitutional violation or the County's purported custom, (*id.* at 5).

Plaintiff conclusorily asserts that Lopez "was grossly negligent in supervising subordinates who

---

detainee.  (*See* Cert. of Disposition.)  Therefore, the Fourteenth Amendment's protections apply.
*See Tutora v. Correct Care Sols., LLC*, No. 17-CV-9169, 2019 WL 1383646, at *4 (S.D.N.Y.
Mar. 27, 2019) ("Because Plaintiff was a pretrial detainee at the time of the allegations, his
deliberate-indifference claims are analyzed under the Due Process Clause of the Fourteenth
Amendment." (citation omitted)); *see also Boykin v. Moreno*, No. 17-CV-6869, 2020 WL
882195, at *6 (S.D.N.Y. Feb. 24, 2020) (same, specifically as to a failure-to-protect claim),
*appeals filed*, No. 20-1626 (2d Cir. May 21, 2020), No. 20-1959 (2d Cir. June 22, 2020).

committed wrongful acts," but provides no factual assertions regarding any of his purported acts or omissions.  (*Id.*)

A supervisor does not become responsible for the actions of those under their command merely because of their supervisory role.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425, at *3 (S.D.N.Y. Aug. 22, 2019) ("[T]he bare fact that . . . [d]efendants appear to hold supervisory roles [does not] change the analysis . . . .  [M]ere linkage to the unlawful conduct through the chain of command . . . is insufficient to show . . . personal involvement . . . ." (citations and quotation marks omitted)). Without any factual allegations tying Lopez to the alleged attack, Plaintiff's allegations are purely conclusory and cannot survive the instant Motion.  *See Smith v. Westchester County*, No. 19-CV-1283, 2019 WL 5816120, at *4 (S.D.N.Y. Nov. 7, 2019) (holding that the "recitation of . . . supervisory titles" was too conclusory to establish personal involvement without "facts suggesting that any [ d]efendant[] participated directly" in the underlying constitutional violation (citation, footnote, and quotation marks omitted)); *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *9 (S.D.N.Y. Sept. 26, 2019) (finding that a plaintiff's attempt to establish the personal involvement of a supervisor failed without "any non-conclusory facts suggesting . . . an unconstitutional policy or custom, . . . gross[] negligen[ce] in supervising subordinates, or . . . deliberate indifference to [the p]laintiff's rights" (citation omitted)); *Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, at *6 (S.D.N.Y. July 29, 2019) (dismissing claims against supervisors for lack of pleading any facts regarding "what the individual [supervisory] defendants knew about the . . . problem or when they knew about it" (citation, alterations,

8

emphases, and quotation marks omitted)); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at
*6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the
plaintiff failed to allege that the supervisory defendants were "present" for, "participated
directly" in, or "somehow permitted" the alleged violation (citation omitted)).  Accordingly,
Plaintiff's claims against Lopez are dismissed.

### 2.  Deliberate Indifference Claim

"[A]n inmate's claim that prison officials failed, as a result of their deliberate
indifference, to protect [the inmate] from the violent actions of other inmates may state a viable
§ 1983 cause of action." *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (citations
omitted); *Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19,
2014) ("Prison officials are liable . . . for harm incurred by an inmate if they act with deliberate
indifference to the inmate's safety." (citation omitted)); *Fair v. Weiburg*, No. 02-CV-9218, 2006
WL 2801999, at *5 (S.D.N.Y. Sept. 28, 2006) ("Failure-to-protect claims are treated as
challenges to conditions of confinement and, accordingly, Plaintiff must demonstrate deliberate
indifference." (citation omitted)).

Because Plaintiff was a pretrial detainee at the time of the allegations, (*see generally*
SAC; Cert. of Disposition), his deliberate indifference claims are analyzed under the Due
Process Clause of the Fourteenth Amendment, *see Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d
Cir. 2000) ("[Because Plaintiff] was in pre-trial detention at the time of the alleged incidents . . .
[t]he district court correctly concluded that [Plaintiff's] claims arise under the Due Process
Clause . . . ." (citation omitted)).  Deliberate indifference claims under the Fourteenth
Amendment are analyzed somewhat differently than the same claims under the Eighth
Amendment, which applies to inmates who have been convicted and sentenced.  *See Darnell v.*

*Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (explaining the different mens rea requirements for Eighth Amendment and Fourteenth Amendment deliberate indifference claims).  To be sure, the overarching framework remains the same.  Under both the Eighth and Fourteenth Amendments, to state a deliberate indifference claim an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendant "acted with deliberate indifference."  *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (collecting cases).

The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment."  *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30).  This requirement is "objective": the inmate must show that the "the alleged deprivation" is "sufficiently serious."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted).  In other words, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm."  *Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *7 (S.D.N.Y. Nov. 20, 2017) (quoting *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996)).

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment."  *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35).  While the Eighth Amendment imposes a subjective standard—that the prison official "know[] of and disregard[] an excessive risk to inmate health or safety," *Darnell*, 849 F.3d at 32 (citation and quotation marks omitted)— the Fourteenth Amendment, applicable here, imposes an objective standard.  That is, the prison official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the

10

condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.  However, "[d]espite the slightly lower standard" applicable to pretrial detainees, "which is akin to objective recklessness, any § 1983 claim or a violation of due process requires proof of a mens rea greater than mere negligence." *Miller v. County of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (some citations and quotation marks omitted) (ultimately quoting *Darnell*, 849 F.3d at 36).

Generally, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), *aff'd*, 164 F.3d 618 (2d Cir. 1998).  Courts may find a substantial risk of serious harm "where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by [the] plaintiff regarding the altercation or a request by [the] plaintiff to be separated from the attacker." *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) (citation, alteration, and quotation marks omitted).  "District courts in the Second Circuit have pointed to the existence, or lack thereof, of no-contact orders as indications that a substantial risk of harm may exist." *Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *8 (S.D.N.Y. Dec. 5, 2019) (collecting cases); *see also Smith v. County of Westchester*, No. 17-CV-9858, 2019 WL 3006407, at *3 (S.D.N.Y. July 10, 2019) (finding that alleging the existence of a WCDOC "keep-separate" order plausibly established a "substantial risk of serious harm to plaintiff's safety" where that order was put in place as a response to a fistfight); *Andrews v. Gates*, No. 17-CV-1233, 2019 WL 2930063, at *6

(D. Conn. July 8, 2019) (finding that the failure to maintain a keep separate order created an "opportunity to assault" plaintiff which posed an "excessive risk to [the plaintiff's] health and safety" and "satisfie[d] the objective component of the deliberate indifference standard").

Here, Plaintiff adequately alleges that he was exposed to a substantial risk of serious harm. Plaintiff alleges that WCDOC's separation order between Plaintiff and Smith resulted from a prior fight, that Monteleon placed Plaintiff in a holding cell with Smith despite the existence of a keep separate order, and that placement in that cell "result[ed]" in an "attack" that caused Plaintiff "several physical injuries." (SAC 3.) Indeed, Defendants do not appear to contest this. (*See generally* Defs.' Mem.) Therefore, the objective component of Plaintiff's failure-to-protect claim has been plausibly alleged.

Defendants do argue, however, that Plaintiff has failed to establish the subjective element of the offense because Plaintiff's allegations raise an inference of, at most, negligence, which is insufficient to establish a constitutional violation. (*See* Defs.' Mem. 6–7.) The Court agrees. Plaintiff alleges only that Monteleon "was in possession" of the keep separate list that purportedly noted that Plaintiff and Smith should not be placed in the same holding cell. (*See* SAC 3.) But this vague allegation fails to plausibly raise an inference that Monteleon "recklessly failed to act with reasonable care" or even that he "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. It is unclear what Plaintiff means by "possession." There are no allegations, for instance, that Monteleon actually read the list, that he knew that he should have checked the list, or that he had any other outside reason to know about Plaintiff and Smith's violent history. (*See generally* SAC.) Plaintiff's repeated statements that Monteleon's failure to review the keep separate list was "negligent," (*see generally* SAC), further hurt his claim because "any § 1983 claim . . . requires

proof of a mens rea greater than mere negligence," *Miller*, 2018 WL 1597401, at *3 (citation, alteration, and quotation marks omitted); *see also Johnson*, 2019 WL 4688542, at *12 (same).

Accordingly, Plaintiff's deliberate indifference claim against Monteleon is dismissed. *See Boykin*, 2020 WL 882195, at *7 (holding that a plaintiff's mere assertion that "[the d]efendants behaved recklessly" was conclusory since it was without any specific factual allegations that could "plausibly allege . . . mens rea," and because plaintiff alleged "negligence" instead (citations and quotation marks omitted)); *Johnson*, 2019 WL 4688542, at *17 (holding that plaintiff failed to state a failure-to-protect claim where a correction officer allegedly failed to separate two arguing inmates because the plaintiff did "not allege that [the officer] knew that the other inmate posed a specific and substantial risk to [the p]laintiff's safety"); *Smolen v. Wesley*, No. 16-CV-2417, 2019 WL 4727311, at *11 (S.D.N.Y. Sept. 25, 2019) (dismissing a failure-to-protect claim where the plaintiff failed to allege that the correction officer specifically knew of a risk to the plaintiff); *Franzese v. City of New York*, No. 17-CV-3020, 2018 WL 5924354, at *3 (S.D.N.Y. Nov. 13, 2018) (dismissing failure-to-protect claim where the plaintiff failed to allege that the defendant "was aware, or had any reason to know that [the p]laintiff's safety was at risk"); *cf. Mays*, 2019 WL 6619330, at *9 (finding that the mens rea element was satisfied in a separation order context where the defendant allegedly *knew* about the separation order as it pertained to the two separated inmates).

### 3.  Municipal Liability Claim

Defendants argue that Plaintiff has failed to state a municipal liability claim against the County.  (*See* Defs.' Mem. 8–10.)  "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs. of City of N. Y.*, 436 U.S. 658, 691 (1978); *see*

*also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)).  That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."  *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).  Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted).  The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).  A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff asserts that "WCDOC correctional officers have a pattern, policy[,] and/or custom of routinely failing to review the keep sep[a]rate list prior to placing inmates into holding cells with other inmates," based "in part" on other "similar civil actions" filed on these issues. (SAC 4.)[5]  The SAC also refers to the County "fail[ing] to intervene" despite "present and prior

---

[5] Plaintiff does not provide any specific examples of other "similar civil actions."  (SAC 4.)

notice" of this practice, and the County "fail[ing] to properly train and supervise its Correctional

Officers as to following protocol."  (*Id.*)

  To establish liability under the third prong of *Monell* requires showing the presence of a

"consistent and widespread" practice.  *Brandon*, 705 F. Supp. 2d at 276 (citations omitted).

Plaintiff fails, however, to plead any particular facts beyond this one incident, which dooms

Plaintiff's claim because "a custom or policy cannot be shown by pointing to a single instance of

unconstitutional conduct by a mere employee of the municipality."  *Boykin*, 2020 WL 882195, at

*5 (citation and quotation marks omitted); *see also Cox v. City of New Rochelle*, No. 17-CV-

8193, 2019 WL 3778735, at *8 (S.D.N.Y. Aug. 12, 2019) (dismissing *Monell* claim where,

"apart from the incident giving rise to this case . . . [the] [p]laintiff fail[ed] to allege facts

plausibly suggesting any other similar example of [the municipality's] failure to supervise or

train officers" (citation omitted)); *Smith*, 2019 WL 3006407, at *4 (dismissing a *Monell* claim for

insufficient enforcement of keep separate orders because a "single alleged violation of . . . keep-

separate protocol does not support [a] claim that the [c]ounty maintained or countenanced a

custom or policy that caused [the] plaintiff's alleged injuries"); *Johnson v. Paul*, No. 17-CV-

4654, 2018 WL 2305657, at *4 (S.D.N.Y. May 21, 2018) (finding that no *Monell* claim had been

made out because "a single incident . . . especially if it involved only actors below the policy

making level, does not suffice to show a municipal policy" (omission in original) (quotation

marks omitted) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))).  Moreover, "mere

citations to lawsuits, even if they did involve comparable conduct, do not alone establish a

custom or practice that is widespread and persistent, particularly if the lawsuits did not result in

adjudication of liability."  *Bethune v. Westchester County*, No. 18-CV-3500, 2020 WL 1032508,

at *5 (S.D.N.Y. Mar. 2, 2020) (citations omitted).  Plaintiff does not cite any particular civil

actions, does not plead factual matter suggesting that those civil actions involved similar conduct or were filed against the same actors, and does not allege that the actions reached conclusions consistent with his allegations.  Accordingly, a "consistent and widespread" custom or practice has not been pled.  *Brandon*, 705 F. Supp. 2d at 276 (citations omitted).

Plaintiff also fails to plausibly allege a failure-to-train claim.  To state a claim for municipal liability based on failure to train, Plaintiff must allege facts which support an inference that the County failed to train its employees, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries.  *See Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) ("To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." (citation omitted)).  Further, "a plaintiff must plausibly allege a specific deficiency in the municipality's training."  *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015).  In particular, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (footnote omitted).

Plaintiff's general claim that the County failed to train and supervise its staff is a "boilerplate assertion[ ]" and is insufficient, without more, to state a *Monell* claim.  *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (citation

and quotation marks omitted) (dismissing failure-to-train claim where a plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").  Therefore, this claim is dismissed.  *See Acosta v. City of New York*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where the plaintiff merely alleged that the city "failed to train its police officers," because the plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused . . . [the ]alleged violations of [the] plaintiff's rights"); *see also Rivera*, 2019 WL 3958425, at *5 (dismissing *Monell* claim where the "[p]laintiff . . . cited no specific deficiency in [the defendant's] training or supervision protocols"); *Dawson*, 2019 WL 3408899, at *5 (same); *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where the plaintiff alleged failure to supervise kitchen workers because the complaint was "devoid of any detailed factual allegations" that WCDOC lacked "a relevant training or supervisory program" or that WCDOC "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").

It is true that a plaintiff may establish deliberate indifference for a failure-to-supervise claim under the fourth prong by showing "that the need for more or better supervision to protect against constitutional violations was obvious," from the fact that there "were repeated complaints of civil rights violations," and that "the complaints [were] followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citation and quotation

marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (citation and quotation marks omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same).  However, even in those cases, the plaintiffs were able to name and detail the allegations in other lawsuits and grievances.  *See, e.g.*, *Tieman*, 2015 WL 1379652, at *19–21 (holding that the plaintiff sufficiently alleged the need for better training or supervision where the plaintiff listed and detailed nine other complaints raising similar allegations against the same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4–5 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged a need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, at *8 n.7 (N.D.N.Y. Mar. 31, 2014) (stating that the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient to surpass the motion-to-dismiss stage). Because, as the Court noted above, Plaintiff provides no details of the other "similar civil actions" he claims exist, (SAC 4), Plaintiff's *Monell* claim cannot survive the instant Motion on this ground, *see Rivera*, 2019 WL 3958425, at *5 (dismissing *Monell* claim where the plaintiff did allege that "numerous similar lawsuits, grievances, and complaints" were filed against the defendant but "fail[ed] to provide any factual details regarding these other lawsuits and grievances"); *Dawson*, 2019 WL 3408899, at *5 (dismissing *Monell* claim based on an allegation

that "[d]efendants knew about . . . poor food conditions because of other complaints, grievances, and lawsuits" as "conclusory" without additional details).

Additionally, Plaintiff's allegation that the County "fails to properly train and supervise its Correctional Officers as to *following protocol*," (SAC 4 (emphasis added)), belies Plaintiff's argument that "an official policy of the municipality caused the constitutional injury," *Roe*, 542 F.3d at 36 (citation omitted).  Plaintiff acknowledges, and indeed asserts, that there was a policy at WCDOC for officers like Monteleon to check the keep separate list, and that Monteleon's failure to do so caused his injury.  (*See generally* SAC.)  Plaintiff is therefore alleging "not that [County] policies were improper, but that [County] personnel failed to follow those policies"; therefore, "any [purported] violation of Plaintiff's constitutional rights was caused by the *failure* to follow a policy, not the policy itself." *Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *4 (S.D.N.Y. Apr. 30, 2020) (emphasis in original) (citations omitted); *see also Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 632 (E.D.N.Y. 2011) (finding a plaintiff's claim was "in direct violation of *Monell*" where the "plaintiff's argument [wa]s not that [the] defendants acted pursuant to an official discriminatory policy . . . [, but r]ather . . . that [a defendant] failed to act in accordance with [the] policy" (italics in original)).[6]  Since failure to follow policy fails to state a *Monell* claim "[b]y definition," *Thomas*, 2020 WL 2092426, at *4 (collecting cases), Plaintiff's allegations are additionally insufficient to create liability, *see id.* (dismissing *Monell* claim for failing to provide adequate worship services in violation of policy as "the antithesis of a *Monell* claim" (italics in original) (citation and quotation marks omitted)); *Paul*, 2018 WL 2305657, at *4 (dismissing *Monell* claim where the plaintiff implied "that the

_____

[6] In any event, given that the Court has concluded that Monteleon's actions, as pled, do not even constitute a constitutional violation, it follows that a formal policy institutionalizing such behavior would arguably not be unconstitutional, either.

denial of proper Jewish meals was an *exception* to WCDOC policy" (emphasis in original) (record citation omitted)); *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010) (explaining that an alleged failure to follow a policy "is the antithesis of a link between policy and action").

Accordingly, Plaintiff's municipal liability claims are dismissed. *See Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing *Monell* claim where the plaintiff failed to "allege the existence of any policy, any actions taken or decisions made by any . . . policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law" and failed to "provide any factual details regarding . . . other [purported] lawsuits and grievances" on similar issues (record citations omitted) (collecting cases)); *see also McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).

### 4.  State Claims

To the extent Plaintiff seeks to allege a state law claim of negligence against Defendants, it fails.  As Defendants point out, (*see* Defs.' Mem. 10), Plaintiff has failed to affirmatively plead that he served a notice of claim.  Under New York law, "as a condition precedent to bringing a claim against a municipality, a plaintiff must file a notice of claim within 90 days after her claim accrues." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)); *see also* N.Y. Gen. Mun. Law § 50-k(6) ("No action . . . shall be prosecuted or maintained against the city . . . or an employee unless notice of claim shall have been made and served upon the city . . . ."); *Olsen v.*

*County of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) ("As a 'condition precedent' to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." (citation omitted)).  Moreover, "in a federal court, state notice-of-claim statutes apply to state-law claims."  *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citations and emphasis omitted). "Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."  *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (footnote omitted).  Further, "the burden is on [the p]laintiff to demonstrate compliance with the notice of claim requirements."  *Peritz v. Nassau Cty. Bd. of Coop. Educ. Servs.*, No. 16-CV-5478, 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019) (citations omitted); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing, inter alia, N.Y. Gen. Mun. Law § 50-i(1)(b))).  "The notice of claim requirements are strictly construed, and a plaintiff's 'failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims.'"  *Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *15 (S.D.N.Y. Aug. 27, 2010) (citation omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013).

Because Plaintiff failed to affirmatively plead that he filed a notice of claim with respect to any state law claims, those claims are dismissed. *See El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) ("Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." (citation and

quotation marks omitted)), *appeal dismissed*, No. 15-1413 (2d Cir. Aug. 4, 2015); *Naples*, 972 F.

Supp. 2d at 390 (dismissing state law claims against municipality where "the [a]mended

[c]omplaint is void of any allegation that a notice of claim was filed prior to the commencement

of [the] action" (footnote omitted)).

## III.  Conclusion

For the reasons above, Defendants' Motion To Dismiss the SAC is granted.  Plaintiff is

given one final opportunity to amend his pleading, addressing the issues raised in this Opinion &

Order.  If Plaintiff wishes to file a third amended complaint, Plaintiff must do so in 30 days.

Plaintiff is advised that the newest complaint would replace, not supplement, his previous

complaints.  The third amended complaint must contain *all* of the claims, defendants, factual

allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file

a third amended complaint, his claims may be dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion, (*see* Dkt.

No. 31), and to mail a copy of this Opinion & Order to Plaintiff.

 SO ORDERED.

Dated:   July 28, 2020
              White Plains, New York

              KENNETH M. KARAS
              UNITED STATES DISTRICT JUDGE

22